

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00133-CR

Danny C. **ALLEN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR6311
Honorable Ron Rangel, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
               Beth Watkins, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: June 20, 2024

AFFIRMED

A grand jury indicted appellant Danny C. Allen on one count of murder. Following a trial, the jury found Allen guilty, and the trial court assessed punishment at sixty years' confinement. On appeal, Allen argues the evidence presented by the State was insufficient to rebut his claim of self-defense or his defense to protect a third person. We affirm.

### BACKGROUND

On March 30, 2019, Thomas Moreno Sr. and Lori Moreno were arguing in their bedroom when Allen, Lori's son from a previous marriage, opened the door and shot Thomas Sr. five times

with a .357 magnum pistol, killing him. On June 6, 2019, Allen was indicted on one count of murder. After a six-day jury trial, in which Allen argued he acted in self-defense or in defense of Lori, the jury convicted Allen of murder, and the trial court sentenced Allen to sixty years of confinement.

In one appellate issue, Allen argues the evidence at trial was insufficient to reject his claim that he acted in self-defense or his defense to protect a third person.

## SUFFICIENCY OF THE EVIDENCE

### Standard of Review

In a sufficiency of the evidence review, "we determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Borton v. State*, 683 S.W.3d 459, 464 (Tex. App.—San Antonio 2023, no pet.). In conducting our review, we view the evidence in the light most favorable to the verdict and adhere to the principle that "[t]he jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury." *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) ("[T]he reviewing court is not to position itself as a thirteenth juror in assessing the evidence."). It is within the jury's purview to draw necessary inferences from the evidence presented. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "It is then our duty to decide whether the necessary inferences are reasonable based on the cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Borton*, 683 S.W.3d at 464.

When, as here, an appellant "challenges the legal sufficiency of the evidence to support rejection of a defense such as self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether a rational jury . . . could have found against appellant on the self-defense issue beyond a reasonable doubt." *Dudzik v. State*, 276 S.W.3d 554, 557 (Tex.

App.—Waco 2008, pet. ref'd). "The defendant has the burden of producing some evidence to support a claim of self-defense." *Id*.; *Zuliani v. State*, 97 S.W.3d 589, 594–95 (Tex. Crim. App. 2003). If the defendant produces some evidence, the State is not required to produce "additional evidence to disprove the defense;" rather, the State need only to "prove its case beyond a reasonable doubt." *Barron v. State*, 630 S.W.3d 392, 403 (Tex. App.—Eastland 2021, pet. ref'd); *Zuliani*, 97 S.W.3d at 594. When a defendant raises a self-defense claim in a murder prosecution yet is found guilty, the jury has implicitly found against the defendant on his self-defense claim. *Smith v. State*, 355 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Dudzik*, 276 S.W.3d at 557 ("The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue."). In sum, it is our duty as the reviewing court to "determine whether the jury's verdict can be considered rational based on the evidence as a whole." *Borton*, 683 S.W.3d at 465.

*Applicable Law*

A person commits the offense of murder if the person intentionally or knowingly causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). Although the statutory bases for murder may be satisfied, such a killing may be justified if done in self-defense. *Braughton v. State*, 569 S.W.3d 592, 606 (Tex. Crim. App. 2018) ("The Texas Penal Code provides that deadly force used in self-defense or in defense of another is a defense to prosecution for murder if that use of force is 'justified.'"); TEX. PENAL CODE §§ 2.03, 9.02, 9.31–9.33.

Subject to certain exceptions, a person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). Despite an actor holding a reasonable belief, "use of force is not justified in response to verbal provocation alone, or if the actor provoked the other's use or attempted use of unlawful force." *Braughton*, 569 S.W.3d at 606; TEX. PENAL CODE § 9.31(b).

"A person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." TEX. PENAL CODE § 9.32(a).

Additionally, when a person uses deadly force to protect a third person, he must satisfy additional requirements to justify his use of deadly force. "A person is justified in using force or deadly force against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person." TEX. PENAL CODE § 9.33; *Miranda v. State*, 350 S.W.3d 141, 147 (Tex. App.—San Antonio 2011, no pet.).

*Analysis*

Allen was indicted for murder by intentionally and knowingly causing the death of Thomas Sr. by shooting him with a firearm. Allen argues all the evidence presented at trial, even when viewed in the light most favorable to the jury's verdict, is insufficient to reject his claim of self–defense or the defense of a third person. In essence, Allen avers a rational fact finder would have found he reasonably believed that his intervention and use of deadly force was immediately necessary to protect himself or Lori from the same. We disagree.

During trial, Lori testified that on the day of the shooting, Thomas Sr. woke up and began to get ready as if he was going to work. This was unusual because Thomas Sr. was retired and "wasn't working at that point." Thomas Sr. suffered from Parkinson's disease and other cognitive impairments, and as a result of Thomas Sr.'s health issues, he routinely suffered from bouts of paranoia, anger, and confusion. After Lori redirected Thomas Sr. from getting ready for work, she went to take a shower in the bathroom located in their bedroom. When she got out of the shower, Thomas Sr. came into the bathroom stating he needed to talk with her. Lori testified they argued for twenty or thirty minutes about whether to talk in the bathroom or bedroom. Lori told the jury that Allen and his brother Toby, who could hear arguing from other rooms in the house, approached the room and asked through the closed door if everything was okay. Thomas Sr. opened the bedroom door and told them he and Lori were fine. Lori and Thomas Sr. continued arguing in the bathroom until Lori eventually agreed to move to the bedroom. Not long after they moved into the bedroom, Allen forcibly opened the bedroom door with a gun by his side, raised it, and shot Thomas Sr. five times—killing him. Lori told the jury "there was yelling, but I don't recall yelling for help" before Allen came into the room and shot Thomas Sr.

Toby testified he was in another room of the house that morning but could hear Thomas Sr. and Lori arguing in their bedroom. Toby walked to the bedroom door and asked if everything

was okay, to which Thomas Sr. responded that everything was fine and to leave him and Lori alone. Shortly after Toby began to walk away from the bedroom door, he testified he saw Allen walk towards the bedroom and heard Lori scream, "No, Danny [Allen], no, Danny [Allen]," and then heard gunshots. Toby told the jury he ran into the bedroom where he saw Lori screaming and Allen standing silent.

During cross-examination, Toby expressed that he was aware of prior physical abuse from Thomas Sr. directed at Lori. He told the jury that he was present for an incident that occurred the year prior, where Thomas Sr. had attempted to attack Lori with a sledgehammer after a disagreement. Toby also testified he was aware that Thomas Sr. normally slept with a gun under his pillow. Lori corroborated that testimony by stating there were nights she was afraid to sleep because she knew there was a gun under Thomas Sr.'s pillow. Other evidence at trial revealed Allen was also present during the sledgehammer incident and helped Lori escape in a car while Thomas Moreno Jr. calmed Thomas Sr. down.

Thomas Jr., who was also in the house on the day of the shooting, echoed Lori and Toby's testimony regarding the sequence of events. Thomas Jr. testified he heard Lori and Thomas Sr. arguing earlier that morning, during which Lori told Thomas Sr. to calm down. He told the jury that later in the morning, he heard Thomas Sr. and Lori argue again. He testified he heard Lori telling Thomas Sr. to leave her alone and then saw Allen walk towards the bedroom, heard the door open, and then heard gunshots. After the gunshots, Thomas Jr. told the jury he heard Lori crying and yelling at Allen. When Allen walked out of the bedroom, Thomas Jr. asked Allen, "What did you do?" Allen did not respond.

Based on the evidence presented, a rational fact finder could have found beyond a reasonable doubt Allen did not act in self-defense or in defense of Lori when he shot Thomas Sr. five times with a .357 magnum pistol. *Miranda*, 350 S.W.3d at 148–49. In fact, Allen's repeated

shots are sufficient to support the jury's finding that Allen intentionally or knowingly caused Thomas Sr.'s death. TEX. PENAL CODE § 19.02(b)(1); *id.* § 6.03(a), (b); *Reyes v. State*, 480 S.W.3d 70, 77 (Tex. App.—Fort Worth 2015, pet. ref'd) ("A jury may infer the intent to kill from any evidence that it believes proves the existence of that intent, including the accused's use of a deadly weapon.").

In our review of the entire record, there is no evidence to suggest that Thomas Sr. produced a weapon or threatened Allen or Lori on the date of the shooting. Rather, Lori testified that right before the shooting, she "started to head towards my side of the bed and he went around to his side. . . . We're not arguing as much." While there was evidence that Thomas Sr. slept with a gun under his pillow, a reasonable jury could have found that Allen's use of deadly force was not immediately necessary to protect Lori from unlawful deadly force. *See* TEX. PENAL CODE §§ 9.02, 9.31–9.33. Specifically, the jury could have believed that Thomas Sr. had threatened or was violent with Lori in the past, but on the day in question did not present himself in a manner that would lead a reasonable person to fear that he posed a danger to Allen or Lori. *See Braughton*, 569 S.W.3d at 604, 610 (jury can believe some defensive evidence and still find against defendant if it ultimately does not find defendant's actions reasonable).

Reviewing the evidence in the light most favorable to the verdict and deferring to the jury to determine conflicts in the evidence and issues of credibility, we hold the evidence is legally sufficient to support the jury's implicit rejection of Allen's claim of self-defense or defense of Lori.[1] Accordingly, we overrule Allen's sole appellate issue.

---

[1] Allen tangentially argues the State failed to present a motive for murder. Motive is not a required element in criminal cases. *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972); *Johnson v. State*, 651 S.W.2d 303, 313 (Tex. App.—San Antonio 1983, no pet.). The State was not required to present and prove Allen's motive for killing Thomas Sr. We overrule this argument.

**CONCLUSION**

Having overruled Allen's sole issue, we affirm the judgment of the trial court.


Lori I. Valenzuela, Justice


DO NOT PUBLISH